IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

LAUREN FANCHER, JOANN WALKER,
and BRONSON D. THOMPSON,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION, USAA CASUALTY AND
CASUALTY INSURANCE COMPANY, and
USAA INDEMNITY MUTUAL
INSURANCE COMPANY,

        Defendants.

_____/

CASE NO.: 4:20-cv-123-SA-JMV

Class Action

## AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiffs, Lauren Fancher ("Fancher"), Joann Walker ("Walker"), and Bronson D. Thompson ("Thompson") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Amended Class Action Complaint against Defendants, United Services Automobile Association ("USAA Association"), USAA Casualty Insurance Company ("USAA Casualty") and USAA General Indemnity Company ("USAA Indemnity") (collectively, "Defendants" or "USAA") and in support thereof state the following:

## NATURE OF THE ACTION

1.    This is a class action lawsuit by Plaintiffs who were named insureds under separate (but materially identical) USAA automobile insurance policies issued for physical

damage, which required payment by USAA of the "actual cash value" or ACV of the insured vehicle in the event of a "total loss." Defendants systematically underpaid Plaintiffs and thousands of other putative Class Members amounts owed to its insureds pursuant to their obligation to pay the ACV of total-loss vehicles insured with comprehensive and collision coverage.

2.      Pursuant to its uniform policy, USAA promised to pay insureds all costs reasonably necessary to purchase a vehicle to replace the total-loss vehicle, including license or registration costs ("license fees") and dealer-fee costs. Nevertheless, USAA fails to pay license fees and dealer fees to total-loss insureds. This failure to pay the full ACV of the total-loss vehicle constitutes a breach of contract.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiffs are members of the putative class, which consists of at least 100 members and Plaintiffs and/or putative class members and Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

4.      Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

5.      At all times material hereto, Lauren Fancher is and was a person domiciled and residing in Grenada County, Mississippi, and is a citizen of the State of Mississippi.

6.    At all times material hereto, Joann Walker is and was a person domiciled and residing in Hinds County, Mississippi, and is a citizen of the State of Mississippi.

7.    At all times material hereto, Bronson D. Thompson is and was a person domiciled and residing in Walthall County, Mississippi, and is a citizen of the State of Mississippi.

8.    At all times material hereto, USAA Association is and was a corporation located in the State of Texas and authorized to transact insurance in the State of Mississippi. Defendant's principal place of business and headquarters are both located in the State of Texas.

9.    At all times material hereto, USAA Casualty is and was a corporation located in the State of Texas and authorized to transact insurance in the State of Mississippi. Defendant's principal place of business and headquarters are both located in the State of Texas.

10.    At all times material hereto, USAA Indemnity is and was a corporation located in the State of Texas and authorized to transact insurance in the State of Mississippi. Defendant's principal place of business and headquarters are both located in the State of Texas.

**FACTUAL ALLEGATIONS**

10.    Defendants' standardized policy language as to comprehensive and collision coverage is present in all USAA auto policies issued by Defendant in Mississippi.

11.    Defendants are insurers within the parent USAA umbrella, and use materially identical policy language, adjusters, claims practices, internal processes, and procedures. The policy language applicable to Plaintiffs and every putative Class Member is the same in all material respects.

**THE USAA INSURANCE POLICY**

12.     Because USAA, USAA Casualty, and USAA Indemnity utilize the same standard and uniform policies containing the same policy language, Plaintiffs refer herein to the "Policy," for simplicity's sake. A copy of the Policy is included as <u>Exhibit A</u>.

13.     The Policy promises to pay for loss caused by collision or by other-than-collision (i.e. comprehensive coverage) reasons. Loss is defined as direct and accidental damage to or theft of the insured vehicle. (Ex. A, pp. 14–19).

14.     A "loss," in other words, is an event that triggers coverage and payment under the Policy.

15.     The Policy asserts that USAA will pay for loss by repairing or replacing the damage to the vehicle, or by paying the equivalent in money.

16.     If USAA declares a loss to be a "total loss," then USAA determined that "the cost to repair [the vehicle] would be greater than the actual cash value minus its salvage value after the loss." (*Id.* at p. 16).

17.     "Actual cash value" is defined under the Policy as "the amount that it would cost, at the time of loss, to buy a comparable vehicle." (*Id.* at p. 14).

18.     When USAA determines that a vehicle has suffered a total loss, its limit of liability is the ACV of the vehicle. (*Id.* at p. 16).

19.     Because a "total loss" means that the cost to repair is greater than the ACV, and the limits of liability for a total loss is the ACV, USAA's Policy obligates it to pay the ACV of a vehicle in the event of a total loss.

20.     USAA determined that each loss suffered by Plaintiffs and the putative class was a "total loss" – meaning that the cost to repair the damage to the vehicle exceeded the ACV of the vehicle, less its salvage value.

21.     Plaintiffs and the putative Class do not challenge Defendants' determination that the loss suffered was a total loss and that Defendants' liability is limited to the ACV of the insured vehicles, nor do they claim Defendants owe a higher amount necessary to repair the damage to the vehicle.

22.     The Policy does not: (1) exclude license fees or dealer fees from the cost to replace the damage or the cost to replace the vehicle; or (2) require an insured to purchase a replacement vehicle prior to receiving payment.

## LICENSE AND DEALER FEES

23.     Mississippi imposes license (or registration) fees or costs in three forms. First, license fees include a $15.00 "privilege tax," a $14.00 service fee, and an ad valorem charge at the applicable millage rate, calculated on the "assessed" value, which is 30% of the manufacturer's suggested retail price ("MSRP") less depreciation. (Taken together, the average vehicle incurs approximately $571.00 in license fees.)

24.     It is illegal to drive a vehicle in Mississippi without valid license or registration, for which the aforementioned costs are imposed.

25.     ACV, under Mississippi law, and as confirmed by the Policy language, includes costs reasonably necessary to purchase a replacement vehicle, which includes the aforementioned license or registration costs.

26. Moreover, the Mississippi Department of Insurance made clear in 2007 that, in the event of a total loss, insurers in the state issuing ACV policies should include license fees (along with title fees and sales tax) in making the ACV payment to insureds, because such costs are necessary to make the insured "whole" (i.e. in possession of the same vehicle as if the loss had not occurred at all).

27. Purchasing a comparable replacement vehicle is also reasonably likely to include "dealer" or "documentation" fees, which are imposed by sellers at an average rate of approximately $300.00.

28. Mississippi caps the amount of dealer fees included in the cost of purchasing a vehicle at $425.00.

29. License or registration fees and dealer fees are both reasonably necessary to securing a comparable vehicle following a total loss.

30. By promising to pay for loss by repairing or replacing the auto, then, USAA promises to pay such necessary costs. Limiting liability to ACV does not unambiguously exclude such costs – if anything, it further *confirms* coverage because under clear Mississippi law, ACV includes such reasonably necessary costs.

31. USAA recognizes as much in that USAA does in fact pay sales tax and title fees, which, like license or registration fees and dealer fees, are necessary to purchase a replacement vehicle. There is no material difference, for purposes of ACV, between sales tax and title fees on one hand, and registration or dealer fees on the other.

32. Nevertheless, USAA never pays license fees or dealer fees in making ACV payments to its insureds following a total loss to the insured vehicle.

33. By promising to pay the ACV of total-loss vehicles, Defendants promise to place insureds into their pre-loss position, which means the cost to be placed back into possession of substantially the same, insurable vehicle. To achieve the pre-loss position would require payment of the aforementioned costs.

34. USAA's failure to pay the full ACV of the insured vehicle by not paying license fees and dealer fees constitutes a breach of contract as to Plaintiffs and every Class Member.

## PLAINTIFFS' TOTAL LOSS ACCIDENTS

**Plaintiff Fancher**

35. At all times material hereto, Plaintiff Fancher was insured under a policy issued by USAA Casualty.

36. At all times material hereto, Plaintiff Fancher insured a legally registered 2017 Hyundai under the policy issued by USAA Casualty.

37. On or about April 12, 2019, the insured vehicle was involved in an accident, after which Ms. Fancher filed a claim for property damage with USAA Casualty.

38. The cost to repair the damage to the vehicle exceeded the pre-loss ACV of the vehicle (less its salvage value).

39. Thus, following the filing of the claim, USAA Casualty determined that the vehicle was a total loss with an adjusted value of $11,954.00, sales tax of $597.70, and title fees of $10.00.

40. USAA Casualty then issued payment after subtracting the deductible, and such payment did not include license or registration fees, nor did it include dealer fees.

41.     USAA Casualty underpaid Plaintiff Fancher by paying less than what was owed under the Policy. Fancher thus did not receive what she bargained for and what was owed to her due to the total loss of her insured vehicle.

42.     By not paying the full ACV of the insured vehicle, USAA Casualty breached its contract with Fancher.

**Plaintiff Walker**

43.     At all times material hereto, Plaintiff Joann Walker was insured under a policy issued by USAA Indemnity.

44.     At all times material hereto, Plaintiff Walker insured a legally registered 2011 Chevrolet Malibu under the policy issued by USAA Indemnity.

45.     On or about July 14, 2017, Walker's insured vehicle was involved in an accident, after which he filed a claim for property damage with USAA.

46.     The cost to repair the damage to the vehicle exceeded the pre-loss ACV of the vehicle (less its salvage value).

47.     Thus, following the filing of said claim, USAA Indemnity determined that the vehicle was a total loss with an adjusted value of $5,866.23, sales tax of $293.31, and title fees of $10.00.[1]

48.     After subtracting the deductible, USAA Indemnity then made payment, and such payment did not include license or registration fees, nor did it include dealer fees.

---

[1] USAA also included approximately $1,230.00 in an additional payment because Ms. Walked paid an additional premium for a specific coverage USAA offers in every state that pays 20% above ACV. It essentially is a coverage for which insureds can pay a higher premium in order to be able to purchase a newer vehicle than the insured vehicle.

49.     USAA Indemnity underpaid Plaintiff Walker by paying less than what was owed under the Policy. Walker thus did not receive what she bargained for and what was owed to her due to the total loss of her insured vehicle.

50.     By not paying the full ACV of the insured vehicle, USAA Indemnity breached its contract with Walker.

**Plaintiff Thompson**

51.     At all times material hereto, Plaintiff Bronson D. Thompson was insured under a policy issued by USAA Association.

52.     At all times material hereto, Plaintiff Thompson insured a legally registered 2014 GMC Sierra 1500 Crew Cab under the policy issued by USAA Association.

53.     On or about December 19, 2017, Thompson's insured vehicle was involved in an accident, after which he filed a claim for property damage with USAA Association.

54.     The cost to repair the damage to the vehicle exceeded the pre-loss ACV of the vehicle (less its salvage value).

55.     Thus, following the filing of said claim, USAA Association determined that the vehicle was a total loss with an adjusted value of $26,548.29, sales tax of $1327.41, and title fees of $10.00.[2]

56.     After subtracting the deductible, USAA Association then made payment, and such payment did not include license or registration fees, nor did it include dealer fees.

---

[2] USAA also included approximately $1,230.00 in an additional payment because Ms. Walked paid an additional premium for a specific coverage USAA offers in every state that pays 20% above ACV. It essentially is a coverage for which insureds can pay a higher premium in order to be able to purchase a newer vehicle than the insured vehicle.

57.     USAA Association underpaid Plaintiff Thompson by paying less than what was owed under the Policy. Thompson thus did not receive what she bargained for and what was owed to her due to the total loss of her insured vehicle.

58.     By not paying the full ACV of the insured vehicle, USAA Association breached its contract with Thompson.

59.     Defendants uniformly fail to make such ACV payment to all Mississippi insureds, including Plaintiffs and every class member.

60.     The Policy obligates USAA to pay the Road and Bridge fee of $15.00, the service fee of $14.00, and ad valorem tax at the applicable local rate. Such costs are reasonably necessary to replace the auto, and are elements of the ACV of the vehicle. At minimum, nothing in the Policy unambiguously excludes license (or registration) fees from coverage.

61.     The Policy obligates USAA to pay dealer fees in the amount reasonably necessary to replace or purchase the vehicle. Importantly, nothing in the Policy conditions payment on the amount actually incurred (if any) by the insured. Nor does USAA owe more than the reasonably-necessary amount even if incurred by the insured.

62.     Walker paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

63.     Fancher paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

64.     Thompson paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

## CLASS ALLEGATIONS

65.     Plaintiffs bring this action seeking representation of the below-defined class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

66.     Plaintiffs are members of and seek to represent the following class in making their claim:

> All insureds, under any Mississippi policy issued by United Services Automobile Association, USAA Casualty Insurance Company, or USAA General Indemnity Company, covering a vehicle with auto physical damage coverage, who 1) made a first-party auto property damage claim during the time period of 3 years prior to the filing of the Complaint to the date on which an Order certifying the class is entered, 2) where such vehicle was declared and adjusted as a total loss, and 3) where the total-loss payment did not include license fees and/or dealer fees.

67.     Plaintiffs are members of the proposed Class.

68.     **Numerosity**: Although the precise number of members of the class are unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because USAA is a large motor vehicle insurer in the State of Mississippi, the class of persons affected by Defendants' unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. Upon information and belief, including the investigation of the undersigned counsel, Plaintiffs believe Class Members numbers in the tens of thousands. Thus, numerosity within the meaning of Rule 23(a)(1) is established.

69.     **Commonality**: there are issues of law and fact common to all Class Members within the meaning of Rule 23(a)(2), the resolution of which will resolve virtually the entire litigation in a single stroke. Central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Common

11

questions include (but are not limited to): (1) whether the Policy includes coverage for the license or registration fees set forth herein; (2) whether the Policy includes coverage for dealer fees; and (3) whether USAA's failure to pay any amount of such fees in making payment on total-loss claims constitutes a breach of the Policy.

70.     **Typicality**: Plaintiffs' claims are typical to those of all Class Members within the meaning of Rule 23(a)(3) because members of the Class are similarly affected by Defendants' failure to pay the full ACV of the insured vehicles. The material and relevant policy terms for each Class Member are substantially identical to the terms of Plaintiffs' policies. Plaintiffs' claims are based upon the same legal theories as those of the Class Members. Plaintiffs suffered the same harm as all the other Class Members.

71.     **Adequacy**: Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs do not possess any interest adverse to those of the Class Members. Plaintiffs are committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. The undersigned counsel have successfully litigated numerous class actions and other complex litigation, including class actions making similar claims as those alleged here related to underpayment of ACV on total-loss vehicles. Thus, Plaintiffs and putative Class Counsel are adequate representatives within the meaning of Rule 23(a)(4).

72.     **Predominance**: the previously-articulated common questions of law and fact predominate over any individual questions within the meaning of Rule 23(b)(3). Questions of liability are identical as to all Class Members. Moreover, the license fees are set at mandatory amounts and rates and are also common to all Class Members. Any individualized questions

concerning the actual damage amount (as a function of the base vehicle value for purposes of the ad valorem rate) or dealer fees amount are purely ministerial and, in any event, are predominated by the common questions pursuant to black-letter Fifth Circuit law.

73.     **Superiority**: Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining individual actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

**COUNT I: CLAIM FOR BREACH OF CONTRACT**
**FOR FAILURE TO PAY LICENSE COSTS**

74.     The allegations contained in Paragraphs 1 through 73.

75.     Plaintiffs were each a party to an insurance contract with USAA as described herein.   All Class Members were parties to an insurance contract with USAA containing materially identical terms.

76.     The interpretation of Plaintiffs' and all Class Members' insurance Policies is governed by Mississippi law.

77.     Plaintiffs and all Class Members made a claim determined by Defendants to be a first-party total loss under the insurance policy, and determined by Defendants to be a covered claim.

78.     Defendants, by paying the total loss claims, determined that Plaintiffs and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

79.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiffs and every Class Member were owed $15.00 in license or registration costs, i.e. the "privilege tax" or Road and Bridge Fee component of license fees.

80.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiffs and every Class Member were owed $14.00 in license or registration costs, i.e. the "service fee" component of license fees.

81.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiffs and every Class Member were owed the applicable ad valorem tax component of license fees.

82.     Defendants failed to pay the aforementioned amounts to Plaintiffs and failed to pay the aforementioned amounts to every Class Member.

83.     Defendants' failure to make such payments constitutes a material breach of contract with Plaintiffs and every Class Member.

84.     As a result of said breaches, Plaintiffs and the Class Members were damaged, and are entitled under Defendants' insurance policies to sums representing the benefits owed for the full ACV of the insured vehicle, as well as costs, prejudgment and postjudgment interest, equitable relief and other relief as is appropriate.

## COUNT II: CLAIM FOR BREACH OF CONTRACT
## FOR FAILURE TO PAY DEALER FEES

85.     Paragraphs 1-73 are hereby incorporated by reference.

14

86.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiffs and every Class Member were owed dealer fees, were are reasonably necessary costs to purchase a replacement vehicle.

87.     Defendants failed to pay dealer fees to Plaintiffs and failed to pay the aforementioned amounts to every Class Member.

88.     Defendants' failure to make such payments constitutes a material breach of contract with Plaintiffs and every Class Member.

89.     As a result of said breaches, Plaintiffs and the Class Members were damaged, and are entitled under Defendants' insurance policies to sums representing the benefits owed for the full ACV of the insured vehicle, as well as costs, prejudgment and postjudgment interest, equitable relief and other relief as is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks and prays for relief and judgment as follows:

1.  For an Order certifying this action as a Class Action on behalf of the Class described above, and appointing Plaintiffs as class representatives and the undersigned counsel as Class Counsel;

2.  For an award of compensatory damages in amounts owed under the Policies;

3.  For all damages according to proof;

4.  For attorneys' fees allowable by law and for costs of suit incurred herein;

5.  For pre and post judgment interests on any amounts awarded;

6.  For other and further forms of relief as this Court deems just and proper.

Dated October 6, 2020                    Respectfully submitted,

                                         *Ed Normand*
                                         Edmund A. Normand, Esq.
                                         FBN: 865590
                                         **Normand PLLC**
                                         Post Office Box 1400036
                                         Orlando, FL 32814-0036
                                         T: (407)603-6031
                                         F: (888)974-2175
                                         ed@,normandpllc.com
                                         service@normandpllc.com

                                         Thomas M. Flanagan, Jr.
                                         Mississippi Bar No.: MB 5211
                                         PO Box 1081
                                         Greenwood, MS 38935
                                         Tel: 662-453-6626
                                         tomflanagan@bellsouth.net


\* The following firms will be filing motions to be admitted *pro hac vice* promptly after this filing.

Andrew J. Shamis, Esq.
FBN: 101754
**Shamis & Gentile, P.A.**
14 NE 1st Avenue, Suite 1205
Miami, FL, 33132
T: (305)479-2299
F: (786)623-0915
ashamis@shamisgentile.com

Scott Edelsberg, Esq.
FBN: 0100537
**Edelsberg Law, P.A.**
19495 Biscayne Blvd #607
Aventura, FL, 33180
T: (305)975-3320
scott@edelsberglaw.com