**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**BRONSON D. THOMPSON**                                                                 **PLAINTIFF**

**VS.**                                        **CIVIL CAUSE NO. 4:20-cv-00123-SA-JMV**

**UNITED SERVICES AUTOMOBILE ASSOCIATION**                          **DEFENDANT**

## REPORT AND RECOMMENDATION

This matter is before the court for a report and recommendation regarding the [26] motion of defendant, United Services Automobile Association ("USAA"), to compel an appraisal and stay this case. For the reasons discussed below, it is the recommendation of the undersigned that the motion be granted.

*Background*

The amended complaint in this case seeks damages on behalf of plaintiff[1] and a purported class for breach of contract. Plaintiff's dispute arises from a payment made by USAA to him in 2017, for the "total loss" of his automobile under an insurance policy ("the Policy"). Doc. #21 at 9; Doc. #26-1. Plaintiff alleges, in a complaint filed approximately three years later, that, according to the Policy, USAA was obligated to pay the "actual cash value" (or "ACV") in the event of a "total loss" of a covered vehicle; that the "ACV" is "the amount that it would cost, at the time of loss, to buy a comparable vehicle;" that the cost to purchase a vehicle in Mississippi includes both statutorily imposed state license fees (or registration fees) and dealer fees (hereinafter "disputed fees"); and by promising to pay its insureds the cost to buy a comparable vehicle for a "total loss," USAA promised to pay him those fees, but failed to do so. Doc. #21.

---

[1] The amended complaint [21] was filed by three plaintiffs: Lauren Fancher, Joann Walker, and Bronson D. Thompson. By stipulation of dismissal, filed thereafter, plaintiffs Fancher and Walker were dismissed. Doc. #23.

In response, USAA demands an appraisal and a stay of the instant case, pending the outcome of the appraisal. In support of its position, USAA argues that all that is required of it, pursuant to the Policy, is to pay the amount of the "loss," and, per the explicit Policy language, if the parties to the Policy do not agree on the amount of the "loss," as here, either is entitled, before advancing with litigation, to a mandatory appraisal and corresponding stay.

Furthermore, as a practical matter, USAA asserts that an appraisal is necessary for plaintiff to demonstrate that he has, in fact, suffered damages—even if it is assumed, as plaintiff contends, that a "loss" under the Policy should include compensation for the disputed fees. Doc. #27 at 9.

The plaintiff, however, has declined to voluntarily pursue an appraisal and objects to a corresponding stay of the case. He argues that the appraisal provision of the contract has not been triggered, as "[p]laintiff does not take issue with the pre-loss underlying value of the vehicle nor the cost to "repair" the damage, which were already determined by USAA…" when it earlier remitted, and plaintiff apparently accepted, payment of the "loss." Doc. #31 at 2. Instead, plaintiff argues that because he only disputes whether the insurance Policy should be interpreted to require USAA to include the amount of the disputed fees in the "loss" and those fees, according to him, are set or capped by statute, there is nothing to appraise.

*Relevant Contract Provisions*

The following provisions of the subject Policy are relevant to the subject inquiry:

## PART D - PHYSICAL DAMAGE COVERAGE
…

## DEFINITIONS
…

A. **"Actual cash value"** means the amount that it would cost, at the time of the **loss**, to buy a comparable vehicle….

B. **"Collision"** means the impact with an object…

…

D. **"Loss"** means direct and accidental damage to the operation safety, function, or appearance of… **your covered auto**…

…

F: **"Repair."**

  1. **"Repair"** means restoring the damaged property to its pre-**loss** operational safety, function, and appearance…

…

**INSURING AGREEMENT**

…

B. Collision Coverage. **We** will pay for **loss** caused by **collision** to **your covered auto**…

…

**LIMIT OF LIABILITY**

…

A. Total loss to **your covered auto. Our** limit of liability… is the **actual cash value** of the vehicle…

…

  2. **We** will declare **your covered auto** to be a total loss if, in **our** judgement, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**.

B. Other than a total loss to **your covered auto**:

  1. **Our** limit of liability… is the amount necessary to **repair** the **loss**…

…

**APPRAISAL**

If **we** and **you** do not agree on the amount of **loss**, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the **actual cash value** and the amount of **loss**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

# PART E - GENERAL PROVISIONS

…

**LEGAL ACTION AGAINST US**

A. No legal action may be brought against **us** until there has been full compliance with all the terms of this policy...

Doc. #26-1.

*Analysis*

In the event of a "collision," the Policy language cited above obligates the insurer to pay for a "loss." It is equally plain that, here, the plaintiff disputes that USAA paid the proper amount of the "loss." Doc. #21 at 4. Accordingly, in the undersigned's view, the unambiguous language of the Policy, cited above, entitles either party to an appraisal prior to advancing litigation over the amount of the "loss." *See*, *Havard v. Kemper Nat. Ins. Companies,* 71 F.3d 876 (5th Cir. 1995) (Appraisal clauses are enforceable contract provisions).

Furthermore, plaintiff's argument—that because he only disputes that the "loss" paid should have included compensation for the "disputed fees," and those fees can be determined by reference to statute, there is no reason for an appraisal under the Policy—is premised on an erroneous, or potentially erroneous, assumption. That is, it presumes that if the disputed fees are added to the cost to buy a comparable vehicle so as to, in plaintiff's view, accurately reflect the "ACV," the cost of "repair" will still exceed the "ACV" (minus salvage value) so that the vehicle still qualifies as a "total loss." In reality, if the addition of the disputed fees to the estimated cost to buy a comparable vehicle results in the cost of "repair" being less than or equal to "ACV" (minus salvage value), there is no "total loss" and the Policy entitles the plaintiff to only the cost of "repair." That amount may, or may not be, more than the original payment made for the "loss."

Moreover, USAA asserts that even if there was a "total loss," its estimate of and payment for that "loss"—meaning its estimate of the replacement cost of the vehicle—may well have been

too high—making, depending on the amount of the overage, the addition of the disputed fees potentially irrelevant. In other words, if that were the case, the plaintiff might not be able to demonstrate damage even with the inclusion of the disputed fees and demonstration of a "total loss."

Plaintiff does not appear to address these arguments, but instead suggests that, even though he now contests the correct amount of his "loss," the insurer may not also dispute it. No authority or explanation is offered for this, seemingly—under the circumstances of this case—lop-sided logic.

Finally, the undersigned notes that the parties' citation to authorities on the issue of whether the court—and not an appraiser—should decide if the phrase "actual cash value" includes certain types of fees is misplaced at this juncture. Addressing this issue now is akin to putting the cart before the horse. For example, and as explained above, the plaintiff cannot hope to demonstrate damages as a consequence of the failure to include any disputed fees in the calculation of the "actual cash value" without a binding appraisal assessing the cost of "repair." Without that, and other estimates, plaintiff cannot hope to establish a "total loss" under the contract, and thus, that he is even entitled to an "ACV" payment.

In view of the foregoing, an appraisal of the "loss" in this case would conserve judicial resources and could either speed the resolution of this dispute or resolve, at least partially, the dispute altogether.

*Recommendation*

For the reasons detailed above, it is hereby recommended that this case be stayed for a period of ninety (90) days and that this court compel an appraisal of the vehicle at issue in this action. *City of Laurel, Mississippi v. ARGO GROUP US*, No. CIV.A. 2:08CV185KSMT, 2009

WL 112220, at *3 (S.D. Miss. Jan. 14, 2009) (staying case for a period of ninety days and compelling an appraisal).

At the expiration of ninety (90) days, if this case remains unresolved, the undersigned recommends that the parties are directed to contact the undersigned for the entry of a scheduling order.

### *Procedure for Filing Objections*

The parties are referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within fourteen (14) days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**RESPECTFULLY SUMBITTED** this, the 16th day of December, 2020.

/s/ Jane M. Virden
U.S. MAGISTRATE JUDGE