IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BRONSON D. THOMPSON                                                            PLAINTIFF

V.                                                   CIVIL ACTION NO. 4:20-CV-123-SA-JMV

UNITED SERVICES
AUTOMOBILE ASSOCIATION                                                         DEFENDANT

ORDER

On October 6, 2020, the Plaintiff, Bronson Thompson, filed an Amended Class Action Complaint [21] on behalf of himself and all others similarly situated, for breach of contract.[1] The Defendant, USAA, filed a Motion [97] for Judgment on the Pleadings on November 4, 2021. The issues have been fully briefed and are ripe for review.

*Factual and Procedural History*

In his Amended Complaint [21], Thompson seeks damages for breach of contract on behalf of himself and a purported class. Thompson's vehicle was involved in an accident on or about December 19, 2017, and thereafter he filed a claim with USAA. Under the policy, if USAA deems the cost to repair the vehicle to be more than the cost, at the time of the loss, to buy a comparable vehicle minus the salvage value, then USAA considers the vehicle to be a "total loss." In such a case, USAA's liability is limited to the actual cash value of the vehicle ("ACV") which is defined as "the amount that it would cost, at the time of **loss**, to buy a comparable vehicle . . ." *See* [21], Ex. 1 at p. 15 (emphasis in original).

After Thompson's accident, USAA deemed his vehicle a "total loss," then paid him the ACV of the vehicle. USAA determined the adjusted value of the vehicle to be $26,548.29, sales

---

[1] Thompson initially filed his Amended Complaint [21] with two other named plaintiffs, Lauren Fancher and Joann Walker, who were later dismissed by stipulation of dismissal. *See* [23].

tax for the vehicle to be $1,327.41, and title fees for the vehicle to be $10.00. USAA subtracted the deductible amount from the total then paid Thompson. USAA deemed this amount to be the appropriate amount pursuant to the Policy's definition of ACV. The amount USAA ultimately paid to Thompson did not include "$15.00 in license or registration costs, i.e. the 'privilege tax' or Road and Bridge Fee component of license fees;" "$14.00 in license or registration costs; i.e., the 'service fee' component of license fees;" "the applicable *ad valorem* tax component of license fees;" and dealer fees. [21] at pgs. 14-15. Thompson argues that such fees should have been included in the payment. The Defendant, on the other hand, contends that the fees should not be included and that it paid the appropriate amount.

After the Court denied the Defendant's request to compel this matter to an appraisal pursuant to the Policy's appraisal provision, the Defendant filed the present Motion [97], seeking judgment on the pleadings.

*Judgment on the Pleadings Standard*

Under Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings." This may be done "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). "In a motion for a judgment on the pleadings '[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" *State Farm Fire and Casualty Co. v. Amazon.com, Inc.*, 414 F.Supp.3d 870, 871 (N.D. Miss. 2019) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). "Stated differently, 'the issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims.'" *Robinson v. Webster County, Mississippi*, 2020 WL 1180422, at *5 (N.D. Miss. Mar. 11, 2020) (quoting *Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 Fed. Appx. 945, 950 (5th Cir. 2009) (internal citation omitted)). "In considering Rule 12(c)

2

motions the court relies on the same standard as that of a Rule 12(b)(6) motion." *State Farm Fire and Casualty Co.*, 414 F.Supp.3d at 871 (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

"When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff." *Runnels v. Banks*, 2012 WL 2839802, at *1 (S.D. Miss. July 10, 2012) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)). A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal citation omitted). It need not contain detailed factual allegations, but it must go beyond formulaic recitations of the elements of a cause of action, labels, or legal conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). "To be plausible, the complaint's 'factual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).

*Analysis*

The Defendant requests that the Court enter judgment in its favor for multiple reasons. First, the Defendant argues that the Plaintiff has incorrectly confused the limit of liability with the insuring agreement. Specifically, the Defendant asserts that the term ACV is not included in the insuring agreement itself (and is only included in the limit of liability section of the Policy); therefore, the Defendant asserts that the Policy does not impose an obligation on the Defendant to provide the ACV to the Plaintiff but, instead, that it is only required to pay the amount specifically provided in the insuring agreement itself. Second, the Defendant asserts that the Plaintiff's

3

argument seeks to change the bargain between the two parties. Namely, the Defendant asserts that the Plaintiff seeks to change their agreement from one of covering "loss" to a replacement agreement. Third, the Defendant asserts that even if the Policy requires the payment of ACV, the dealer fees and taxes the Plaintiff seeks are not included in ACV. Finally, the Defendant asserts various additional arguments that the Court will consider together. The Court will address each of these arguments in turn.

   I.    *Applicable Policy Provision*

Bearing in mind the appropriate legal standard articulated above, the Court first turns to whether the Plaintiff has sufficiently pled that the Defendant is required to pay ACV as part of the Policy. *State Farm Fire and Casualty Co.*, 414 F.Supp.3d at 871 (quoting *Hughes*, 278 F.3d at 420). The Policy at issue has various provisions under "Part D—Physical Damage Coverage." Under the "Insuring Agreement" provision, collision coverage is addressed as follows:

> B. Collision Coverage. **We** will pay for **loss** caused by **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

[21], Ex. 1 at p. 17 (emphasis in original).

The "Limit of Liability" provision reads in pertinent part as follows:

> A. Total loss to **your covered auto**. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**.
> . . .
>    2. **We** will declare **your covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**.

[21], Ex. 1 at p. 17 (emphasis in original).

To provide clarity, the "Definitions" provision includes the following definitions:

> A. "**Actual cash value**" means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.
>
> . . .
>
> D. "**Loss**" means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto**, or personal property contained in **your covered auto**. **Loss** includes a total loss, but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any loss of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

[21], Ex. 1 at pgs. 15-16 (emphasis in original).

The Defendant first argues that the Plaintiff's reliance on the limit of liability portion of the contract as outlining his coverage is misplaced and that, as a result, the Plaintiff is not entitled to the coverage he seeks under the Policy. Specifically, the Defendant asserts that it is not required to pay the ACV but instead is only required to pay the amount of "loss." As such, the Defendant asserts that it is not required to pay the fees and taxes the Plaintiff seeks as such payments are not included in "loss." Such is a question of policy interpretation.

The Court notes that interpreting an insurance policy is a question of law. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 428 (5th Cir. 2007) (citing *Welborn v. State Farm Mut. Auto. Ins. Co.*, 480 F.3d 685, 687 (5th Cir. 2007) (per curiam)). Similarly, "[t]he initial question of whether the contract is ambiguous is a matter of law." *Benchmark Health Care Center, Inc. v. Cain*, 912 So.2d 175, 182 (Miss. Ct. App. 2005) (quoting *Lamb Const. Co. v. Renova*, 573 So.2d 1378, 1383 (Miss. 1990)). "Mississippi courts give effect to the plain meaning of an insurance policy's clear and unambiguous language." *Leonard*, 499 F.3d at 429 (citing *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So.2d 990, 996 (Miss. 2006)). "A policy must be considered as a

whole, with all relevant clauses together." *United States Fidelity and Guar. Co. of Mississippi v. Martin*, 998 So.2d 956, 963 (Miss. 2008) (citing *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So.2d 550, 552 (Miss. 1998)).

When ambiguity exists in an insurance policy, the policy is to be interpreted in favor of the insured. *Leonard*, 499 F.3d at 429 (citing *J & W Foods Corp.*, 723 So.2d at 552). "Ambiguity arises when a term or provision is susceptible to more than one reasonable meaning, but can also result from 'internal conflict' between policy provisions that renders uncertain the meaning of the policy as a whole." *Id*. (citing *Miss. Farm Bureau Mut. Ins. Co. v. Walters*, 908 So.2d 765, 769 (Miss. 2005)). Ambiguity also exists "when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage." *Martin*, 998 So.2d at 963 (citing *Crum v. Johnson*, 809 So.2d 663, 666 (Miss. 2002); *Universal Underwriters Ins. Co. v. Buddy Jones Ford Lincoln-Mercury, Inc.*, 734 So.2d 173, 176 (Miss. 1999)). But, to be sure, "[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So.2d 400, 404 (Miss. 1997) (quoting *Cherry v. Anthony, Gibbs, Sage*, 501 So.2d 416, 419 (Miss. 1987) (internal citations omitted)).

Here, the Defendant relies on two cases in which the Seventh Circuit determined that the limit of liability section does not impose on the insurer an obligation to pay the Plaintiff the specific amount listed in that section. *See Sigler v. GEICO Cas. Co.*, 967 F.3d 658, 660 (7th Cir. 2020) (emphasis in original) ("This argument misconstrues a limitation on liability as a promise to pay. Put slightly differently, Sigler mistakes a liability ceiling for a floor. The Limit of Liability section of the policy doesn't promise to pay these costs regardless of whether the insured incurs them; it simply describes the *most* that GEICO will pay in the event of a covered loss."); *see also Coleman*

6

*v. Garrison Prop. & Cas. Ins. Co.*, 839 Fed. Appx. 20 (7th Cir. 2021) (arriving at the same conclusion as *Sigler* regarding the limit of liability section).

The Plaintiff on the other hand argues that the Policy should be read as a whole and further argues that the cases on which the Defendant relies—*Sigler* and *Coleman*—are inapplicable as they rely on Illinois law. Specifically, while the *Sigler* Court observes that the limit of liability is not an obligation to pay, the court's holding is concerned with the applicable state law which requires a plaintiff to receive taxes and fees only if he or she has incurred the fees within 30 days of receiving the settlement. *Sigler*, 967 F.3d at 660, 661. Similarly, *Coleman* relies on *Sigler* to arrive at the same conclusion. *Coleman*, 839 Fed. Appx. at 21-22.

As the Plaintiff points out, other courts have rejected *Sigler* and *Coleman* for the fact that they rely on state law and have found instead that ambiguity does exist as to whether the payment of ACV (and taxes and fees) is required. For example, in *McPheeters* the District Court for the Southern District of Ohio, interpreting synonymous provisions, reasoned as follows:

> The reasoning of *Sigler* and *Coleman* indeed align with USAA's argument that ACV, as used in a "limits" section of a policy is a "ceiling," disconnected from any affirmative coverage obligations. *See e.g.*, *Sigler*, 967 F.3d at 660 (7th Cir. 2020). *Coleman*, furthermore, appears to address an insurance policy identical to the policy in this case. 839 F. App'x 20 (7th Cir. 2021).
>
> But neither *Sigler* nor *Coleman* apply Ohio law. As the *Desai* court explained on a motion to reconsider following the 7th Circuit's order, "*Sigler* interpreted an insurance policy under the law of a different State, and local insurance regulations specifically guided the *Sigler* Court. Accordingly, it has limited persuasive authority here." *Desai*, No. 1:19-CV-2327, 541 F.Supp.3d at 823-24, (N.D. Ohio May 24, 2021) (internal citations omitted). The same is true for the since-decided *Coleman*, 839 F. App'x 20 (7th Cir. 2021).

*McPheeters v. United Services Automobile Association*, 549 F.Supp.3d 737, 747 (S.D. Ohio 2021).

This Court finds the reasoning of *McPheeters* to be persuasive. As that court recognized, the reliance on the law of another state limits the applicability of *Sigler* and *Coleman*—particularly when considering the stage of this litigation.

Additionally, while the Policy requires the Defendant to pay for the "loss," the Court notes that the Defendant has already chosen to pay its limit of liability as opposed to the amount of "loss." Ultimately, at least for purposes of this stage in the proceedings and the arguments presently before it, the Court finds the Policy to be ambiguous as to whether it requires the Defendant to pay the ACV or the amount of "loss." Consequently, the Defendant's argument for dismissal on this point is not well-taken. The Defendant's request for dismissal on this ground is therefore DENIED.

II.     *Coverage for Loss, Not Replacement*

The Defendant argues that the Plaintiff is attempting to change the agreed upon terms of the Policy by turning the Policy into a replacement policy as opposed to a policy paying for "loss." Specifically, the Defendant argues that "USAA only promised to pay for loss, which is centered on damage to the covered auto. . . [n]either Taxes nor Dealer Fees are a 'loss' because they are not 'direct and accidental damage' to the vehicle." [98] at p. 9 (internal citation omitted). The Defendant further argues that "USAA's obligation is to 'pay for **loss** in *money*' and not, for example, replace the vehicle." *Id*. (emphasis in original). The Court finds this argument to be without merit. The Court notes that the Defendant has provided only one case citation to bolster this argument and that case only to prove that compensable loss is not the same as replacement.

The Plaintiff cites to an insurance treatise to explain the differences between ACV coverage and replacement coverage. The most notable differences between the two types of coverage are that ACV coverage "makes the insured responsible for bearing the cash difference necessary to replace old property with new property" whereas replacement cost coverage "allows recovery for

8

the actual value of property at the time of loss, without deduction for deterioration, obsolescence, and similar depreciation of the property's value." [102] at p. 17 (quoting 12A Couch on Ins. § 176:56). Here, the Plaintiff claims that he is not seeking a payment that does not account for depreciation and therefore is not seeking replacement coverage. Therefore, the Defendant's Motion [97] based on this argument is DENIED.

### III.   Dealer Fees and Taxes as Part of ACV

The Defendant also argues that even if it owes the Plaintiff the ACV, it should not be required to pay the Plaintiff the additional taxes and fees he seeks. Courts have previously addressed this issue, relying on state law for direction on whether to include taxes and fees in the insurance company's obligation. *See Jones v. Government Employees Insurance Company*, 2019 WL 3254207, at *4 (M.D. Fla. July 19, 2019) (finding that title fees and tag transfer fees are included in ACV after considering Florida law); *see also Desai v. GEICO Casualty Co.*, 478 F.Supp.3d 609, 614 (N.D. Ohio 2020) (internal citations omitted) ("[T]hough it is true that there is no express language in the Policy that requires Geico to pay license fees, title fees, and dealer fees, many courts have concluded that 'actual cash value' includes these disputed fees."). The Court notes that while the Defendant has the burden to come forward with proof as to why these taxes and fees are not included in the ACV, the Defendant has failed to do so. For example, both parties cite to a Bulletin from the Mississippi Department of Insurance and argue why they believe the Bulletin supports their respective arguments. *See* [100], Ex. 1. But, as the Defendant correctly points out, interpreting the Policy is the Court's role. *See Leonard*, 499 F.3d at 428 (citing *Welborn*, 480 F.3d at 687 (per curiam)). Notably, the Defendant has provided no other case law or state statutes that are on point that support its argument that such fees and taxes should not be paid. Therefore, ambiguity remains. As courts have previously found, "[w]hen [an insurance company]

elected to limit its liability rather than pay the full value of the losses incurred by the members of the putative class, it created an ambiguity as to how much its liability is limited." *See Wright v. GEICO Casualty Company*, 2021 WL 4429190, at *5 (M.D. La. Sept. 27, 2021) (slip copy).

Seeing as there is such ambiguity in what is included as part of the cost "to buy a comparable vehicle," the Defendant's failure to pay those fees *could* amount to a breach of contract. As such, the Court finds that the Plaintiff has sufficiently stated a claim for which relief could be granted. As a result, the Defendant's Motion [97] as to this point is DENIED.

IV. *Additional Arguments*

The Court will address the Defendant's remaining arguments together. Specifically, the Defendant argues that even if it is required to pay fees and taxes as part of the ACV, Mississippi law only requires motor vehicle dealers to pay Dealer Fees. Therefore, if the Plaintiff does not purchase a vehicle from a dealer, then such a fee might not be mandatory for the Plaintiff to pay. The Defendant also argues that the Plaintiff might not be required to pay the *ad valorem* or highway privilege taxes because certain exceptions could apply that would preclude the Plaintiff's payment. The Defendant also argues that those taxes are not costs incurred as part of the *purchase* of a vehicle. Instead, those costs are incurred with *using* a vehicle and thus are not applicable here. The Defendant also asserts that Mississippi law provides a credit for *ad valorem* and highway privilege taxes, so the Defendant does not owe those additional expenses to the Plaintiff.

All these arguments are premature as these are questions that should be decided after discovery has been conducted. *See Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact."); *see also*

*Bastian v. United Services Automobile Association*, 150 F.Supp.3d 1284, 1286 (M.D. Fla. 2015) ("The insurance companies had moved to dismiss on the grounds that neither Florida law nor the policies require them to pay more than the sales tax actually incurred. The Court denied the motion without prejudice, concluding that the issue would be best decided on a full record after discovery."). For example, as the Plaintiff points out, whether an exemption applies that would preclude the Plaintiff from paying the previously mentioned taxes is a question of fact that would not be properly determined at this stage in the proceedings. As a result, the Defendant's Motion [97] as to this point is DENIED.

*Conclusion*

For the reasons set forth above, the Defendant's Motion [97] for Judgment on the Pleadings is DENIED. The Plaintiff shall be permitted to proceed on his claims.

SO ORDERED, this the 27th day of July, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE